# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| KELVIN COGDELL,<br>Plaintiff,<br><br>v.<br><br>TORREY COGDELL,<br>Defendant. | No. 3:17-cv-00795 (SRU) |

# RULING AND ORDER

Kelvin Cogdell, a prisoner incarcerated at Massachusetts Correctional Institution – Shirley, filed suit against his brother, Torrey Cogdell ("Torrey"), for converting Social Security disability insurance checks intended for Cogdell. After examining Cogdell's complaint, I conclude that the allegations do not suffice to establish federal subject matter jurisdiction. Therefore, I dismiss the case *sua sponte*.

## I.     Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A party who seeks to invoke a court's jurisdiction bears the burden of establishing that it exists by alleging facts to demonstrate that the legal basis for the dispute allows it to be adjudicated in federal court. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Although I "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party," I may consider materials outside the record for the purpose of determining whether subject matter jurisdiction exists. *Id.* (quoting *Warth*, 522 U.S. at 501).

## II.     Background

On May 11, 2017, Kelvin Cogdell mailed a complaint addressed to "The Trial Court of Conne[c]ticut, New Haven Superior Court" to the United States District Courthouse in New Haven.[1] *See* Compl., Doc. No. 1, at 11. In the complaint, Kelvin Cogdell asserts that "through unofficial means" he discovered that his "biological birth brother," Torrey Cogdell, "receiv[ed] specific government issued disability checks and . . . use[d] [ ] Kelvin Cogdell's personal physically executed sig[nature] to . . . cash, deposit, or otherwise utilize the funds deriving from those checks." *See id.* at 2. Cogdell states that he "had [no] knowledge that th[e] fraud was being perp[e]trated" and "does not know for how long th[e] fraudulent activity was ongoing." *Id.* He asserts that Torrey's actions placed "the personal freedom and integrity of the plaintiff . . . in jeopardy" and "[a]ffect[ed] his personal credit." *Id.* at 3. He also claims that Torrey's actions "damaged the character and person of the plaintiff" and "in all likel[i]hood subjected the plaintiff to criminal fraud investigation" or "criminal prosecution." *Id.* at 4. Cogdell estimates his "damages claim [at] $20,000.00," but "request[s] to a[m]end and[/]or modify that amount based on yet to be discovered financial information." *Id.*

---

[1] Along with his complaint, Cogdell also submitted a motion for leave to proceed in forma pauperis. *See* Doc. No. 2. The motion did not attach a ledger sheet showing the last six months of transactions. After two notices of insufficiency, Cogdell filed a Prisoner Trust Fund Account Statement on June 15, 2017. *See* Doc. No. 9. The statement shows that Cogdell has a personal account balance of $2,260.54 and a savings account balance of $2,000.73.

Because Cogdell bears no costs for room or board, requiring him to pay the $400.00 filing fee would not force him to "choose between abandoning a potentially meritorious claim or foregoing the necessities of life." *See Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam). As I discuss, however, I conclude that Cogdell's complaint does not establish federal subject matter jurisdiction, and so I dismiss the case *sua sponte* rather than require him to pay the $400.00 filing fee.

**III.    Discussion**

Federal courts are courts of "limited subject-matter jurisdiction," *In Touch Concepts v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015), which means that they may only adjudicate cases for which Congress and the Constitution grant "power to hear and determine the subject-matter in controversy." *Doscher v. Sea Port Grp. Secs.*, 832 F.3d 372, 383 n.15 (2d Cir. 2016) (quoting *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 714 (1838)). By statute, Congress has authorized district courts to exercise jurisdiction over—among other things—(a) "civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, commonly called "federal question jurisdiction," and (b) "civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States," 28 U.S.C. § 1332, commonly called "diversity jurisdiction." Because "[s]ubject-matter jurisdiction can never be waived or forfeited," when federal jurisdiction over a case is in doubt, "courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). I conclude that both federal question and diversity jurisdiction are lacking in this case.

Cogdell's complaint does not identify a specific common law or statutory basis for his claims, but I construe it as attempting to state causes of action for Social Security fraud (which would invoke federal question jurisdiction) and identity theft or conversion (which would invoke diversity jurisdiction). *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (emphasis and internal quotation marks omitted). Neither purported cause of action suffices to establish federal jurisdiction.

A. Social Security fraud

The gravamen of Cogdell's complaint is that his brother Torrey used Cogdell's Social Security number to fraudulently obtain Social Security disability checks intended for Cogdell. A federal statute, 42 U.S.C. § 408, criminalizes such conduct. The statute prohibits:

> (2) mak[ing] or causes to be made any false statement or representation of a material fact in any application for any payment or for a disability determination . . . ; or . . .
>
> (6) willfully, knowingly, and with intent to deceive the Commissioner of Social Security as to his true identity . . . furnish[ing] or caus[ing] to be furnished false information to the Commissioner of Social Security with respect to any information required by the Commissioner of Social Security in connection with the establishment and maintenance of [Social Security] records . . . ; or
>
> (7) . . . for the purpose of obtaining . . . any payment or any other benefit to which he . . . is not entitled, . . . (B) with intent to deceive, falsely represent[ing] a number to be the social security account number assigned by the Commissioner of Social Security to him . . . , when in fact such number is not the social security account number assigned by the Commissioner of Social Security to him . . . .

*Id.* at § 408(a). Section 408 punishes violations with a fine and/or up to five years' imprisonment. *Id.*

Cogdell's complaint could be construed as an attempt to obtain civil remedies for Torrey's alleged violation of section 408. But "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (internal quotation marks omitted). Rather, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When a congressional enactment does not "display[] an intent to create . . . a private remedy, . . . a cause of action does not exist and courts may not create one." *Id.* at 286–87. Thus, Cogdell may sue Torrey for the latter's

4

alleged violation of section 408 only if Congress intended the statute to "creat[e] a privately enforceable remedy." *See Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 100 (D.D.C. 2006).

Courts agree that section 408 only establishes "criminal penalties" and "does not provide a basis for a private civil cause of action." *See, e.g.*, *Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 33 (D.D.C. 2006), *aff'd*, 2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) (per curiam); *accord Bryant v. Comm'r of Soc. Sec.*, 2015 WL 6758094, at *21 (S.D.N.Y. Nov. 5, 2015) ("There is no private right of action under [42 U.S.C. § 408]."); *Zahl v. Kosovsky*, 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) ("42 U.S.C. § 408 . . . do[es] not provide for a private right of action . . . ."), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) (summary order); *Hennis v. Trustmark Bank*, 2010 WL 1904860, at *4 (S.D. Miss. May 10, 2010) ("[Section 408] does not create a private cause of action."); *Edge v. Prof'l Claims Bureau*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999) ("[Section] 408 . . . is a criminal statute which provides for no civil remedies."), *aff'd mem.*, 234 F.3d 1261 (2d Cir. 2000) (summary order). "Though a bare criminal statute does not necessarily preclude an implied private right of action," *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999), the Second Circuit has cautioned that courts should "be especially reluctant to imply a private right of action where the statute explicitly provides a different remedy." *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308 (2d Cir. 2000) (internal quotation marks omitted). Here, section 408's "express provision" of criminal penalties "suggests that Congress intended to preclude" other methods of enforcement. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005); *cf. Bates*, 466 F. Supp. 2d at 100 ("*criminal* liability" provided by section 408 provides "further indication that the [statute] should not be construed, in the absence of clear language to the contrary, as creating a privately enforceable remedy").

Because I discern "nothing in the statute that suggests that a private civil cause of action is available," I follow the overwhelming weight of authority and hold that "no private cause of action exists" to remedy a violation of section 408. *See Johnson v. Mel Foster Co.*, 2012 WL 12977529, at *2 (S.D. Iowa Feb. 21, 2012). As a result, Cogdell fails to state a claim for Social Security fraud and cannot invoke federal question jurisdiction.

B. <u>Identity theft or conversion</u>

Cogdell's complaint also could be read to raise a civil claim for identity theft or conversion under Connecticut law. "An identity theft occurs when someone misappropriates another person's name or other personal information in order to engage in fraud or other crimes." *Galper v. JP Morgan Chase Bank*, 802 F.3d 437, 441 n.1 (2d Cir. 2015). In Connecticut, state law prohibits "knowingly us[ing] personal identifying information of another person"—such as a "name" or "Social Security number"—"to obtain or attempt to obtain money, credit, goods, services, property or medical information without the consent of such other person." Conn. Gen. Stat. § 53a-129a. Connecticut also "has created by statute a private civil cause of action for victims . . . to recover damages from identity thieves." *See Galper*, 802 F.3d at 441 n.1. Conn. Gen. Stat. § 52-571h(a) authorizes "[a]ny person aggrieved by [identity theft] . . . [to] bring a civil action in the Superior Court for damages against the person who committed the violation."

In addition, Connecticut recognizes the common law tort of conversion, which "occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770 (2006) (quoting *Hi-Ho Tower v. Com-Tronics, Inc.*, 255 Conn. 20, 43 (2000)). "Thus, '[c]onversion is some unauthorized act which deprives another of his property permanently or

for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm.'" *Id.* (quoting *Label Sys. Corp. v. Aghamohammadi*, 270 Conn. 291, 329 (2004)).

Cogdell alleges that his brother Torrey Cogdell used Cogdell's "personal name and[/]or identity" to obtain disability benefits for which Torrey "was not eligible," by "report[ing] . . . that [ ] Kelvin Cogdell was in fact the person in receiept of . . . those periodically issue[d] government ben[e]fit checks." Compl., Doc. No. 1, at 6. In light of "the special solicitude that federal courts ordinarily afford to *pro se* litigants," *see Tracy v. Freshwater*, 623 F.3d 90, 92 (2d Cir. 2010), Cogdell's allegations suffice to state a claim for identity theft under Conn. Gen. Stat. § 52-571h(a) or a claim for common law conversion of the Social Security checks.

Cogdell cannot, however, satisfy the amount-in-controversy requirement for diversity jurisdiction.[2] Section 1332 only empowers district courts to hear cases between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000," 28 U.S.C. § 1332, as measured "at the time the action is commenced." *Chase Manhattan Bank v. Am. Nat'l Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996). The "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assur. Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)). Courts "recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in

---

[2] It is unclear whether Cogdell can meet the first requirement for diversity jurisdiction, that the parties be "citizens of different States." 28 U.S.C. § 1332. The complaint does not mention the permanent residence of either party. (Although Cogdell is currently incarcerated in Massachusetts, he "remains a citizen of the state where he was domiciled before his incarceration." *Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010) (per curiam); *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006).)

7

controversy.'" *Id.* (quoting *Wolde-Meskel v. Vocational Instruction Proj. Cmty. Servs.*, 166 F.3d 59, 63 (2d Cir. 1999)); *cf. Zacharia v. Harbor Island Spa*, 684 F.2d 199, 202 (2d Cir. 1982) ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations . . . .").

In the present case, Cogdell "submit[s] a specific damages claim of $20,000," Compl., Doc. No. 1, at 4, well below the $75,000 minimum for federal jurisdiction. Even acknowledging that Cogdell characterizes his claim as "extrem[e]ly conservative," *id.* at 6, an estimate of $20,000 in damages hardly provides a basis to conclude with "'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *See Scherer*, 347 F.3d at 397 (quoting *Tongkook Am.*, 14 F.3d at 784). "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, __ U.S. __, 135 S. Ct. 547, 553 (2014). Because Cogdell's $20,000 estimate was "apparently made in good faith," it "controls" for purposes of calculating the amount in controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Therefore, the case does not satisfy the requirements for diversity jurisdiction.

**IV.     Conclusion**

The complaint in this case suggests that it was never intended to be filed in federal court. Cogdell captioned his complaint "The Trial Court of Conne[c]ticut, New Haven Superior Court," and repeatedly referred in the body of the document to the "Superior Court." *See* Compl., Doc. No. 1. Through a simple mistake, Cogdell seems to have mailed his complaint to the federal courthouse at 141 Church Street in New Haven, rather than to the state courthouse at 235 Church Street. My ruling with respect to the lack of federal jurisdiction over Cogdell's claims should not be taken to indicate that his case cannot be heard in Connecticut Superior Court.

For the reasons stated, I dismiss Cogdell's case without prejudice for lack of subject matter jurisdiction. The Clerk shall terminate the case.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge